Filed Electronically

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:05-CV-183M

AMANDA WEST                                                                                    PLAINTIFF

V.

**MEMORANDUM IN SUPPORT OF MOTION FOR INFERENCE
REGARDING DEFENDANT TYSON FOODS, INC. SPOLIATION
OF EVIDENCE**

TYSON FOODS, INC.                                                      DEFENDANT

\* \* \* \* \* \* \* \*

Plaintiff Amanda West, by counsel, hereby submits this Memorandum in Support of her Motion that, based on spoliation of evidence by Defendant Tyson Foods, Inc.,[1] the Court should draw an adverse inference against Tyson in the summary judgment context, in the presentation of facts at trial and further grant a jury instruction permitting such inference by the trial jury.

*Statement of Facts*

In this sexual harassment action brought under both the federal Civil Rights Act of 1964 and the Kentucky Civil Rights Act, a key document evidencing Plaintiff Amanda West's complaints of sexual harassment to her employer, Defendant Tyson Foods, Inc., has been negligently lost or misplaced by Defendant.

On February 17 or 18, 2005, Amanda West met with Ralph Guizar, a manager in the Human Resources Department of Tyson's Robards, Kentucky processing facility. Guizar depo., p. 17 (a copy of the cited pages from Guizar's deposition are attached hereto as Exhibit A). The purpose of the meeting was to permit Tyson to conduct an exit interview with West, because

---

[1] Plaintiffs make no assertion of fault against Tyson's honorable counsel.

West had refused to return to work a few days earlier after allegedly experiencing continuing sexual harassment during her approximately five weeks of employment. Id. at 17-18.

Guizar claims that West, during the exit interview, reported that she had been sexually harassed, but that West refused to cooperate with Guizar in providing any detailed information such that an investigation into West's concerns could be conducted. Attached hereto as Exhibit B is a series of emails from Guizar, months after the exit interview, in which Guizar admits a faulty memory as to the interview and its substance. While Guizar acknowledges that West told him that "Hispanics were touching her behind, etc.", Guizar now also claims that West had alleged that "all" of the Hispanics at the Robards plant had done so. Id. at 26. Guizar discounts West's truthfulness in his recollected version of West's exit interview because he finds "it hard to believe that all [253-300] of the Hispanics were touching her behind". Id. at 35, 52. Guizar also claims that he cannot recall West telling him in the exit interview of numerous incidents where West was physically assaulted in a sexual manner. Id. at 27. Guizar also claims now that West denied during the exit interview having made any prior report to her supervisor of any of these issues or incidents while they were occurring. Id. at 31-32.[2] Guizar also makes other claims from the exit interview, claiming that West refused to cooperate, refused to identify any individuals who were involved in the harassment and that "she didn't want to pursue anything". Id. at 29, 31. Guizar blames West's refusal to cooperate during the exit interview as the reason that Tyson did not conduct an investigation into West's complaints at that time. Id. at 51.

West has a very different version of the exit interview with Guizar, including that she reported to Guizar **every incident** of sexual harassment, physical assault and battery, comments and threatening gestures. West depo., p. 107. West has testified that she specifically identified two of the harassers by name during the exit interview with Guizar. Id. West has also testified

---

[2] Tyson has now acknowledged that Guizar is simply wrong about Guizar's position that West had not previously reported sexual harassment to her supervisor, in fact disciplining Supervisor Corey Parks and Trainers O'dell Stokes and Natasha Brown for failing to handle West's earlier reporting of sexual harassment consistent with Tyson's stated sexual harassment policy. Amanda West depo., pp. 71-74 (cited pages to Amanda West's deposition are attached hereto as Exhibit C). Attached hereto as Exhibit D are the disciplinary documents on Stokes, and Brown related to their failure to handle West's concerns properly.

that she identified her supervisor (Parks) and O'dell Stokes to Guizar as individuals to whom West had already reported the harassment.  Id. at 108.  West also testified that she told Guizar she was leaving Tyson because of the harassment and that Guizar then promised that an investigation would be conducted into West's complaints to him.  Id. at 109.  **It stands undisputed that no investigation was initiated as a result of any of West's complaints to Tyson during her employment or as a result of West's exit interview with Guizar.**

Guizar admits that he prepared two pages of notes on a Tyson exit interview form during his exit interview with West, as required by Tyson policy.  Guizar depo., pp. 21-23, 35.  Guizar claims that at the conclusion of West's exit interview, Guizar placed the notes in a tray in the Tyson human resources office.  Id. at 21-23.  Guizar claims he has no idea what happened to the notes after he placed them in the tray and has not seen them since.  Id.  **It is undisputed that Tyson has not produced Guizar's notes from the exit interview, claiming that they cannot be located.**

Once Guizar identified that he had indeed contemporaneously prepared two pages of exit interview notes, West arranged to take the 30(b)(6) deposition of the Tyson corporate representative, Stephanie Rackard.  Ms. Rackard was questioned specifically about the missing notes:

> Q. Does Tyson know what happened to those exit interview notes by Mr. Guizar?
> A. Based on the information I reviewed in the file, I do not see where an exit review was located.
> Q. Okay.  And Mr. Guizar has verified that he actually took notes and put them in whatever stream of information Tyson takes in these things.  So my real question was, is Tyson aware of what happened to those notes?
> A. No.
> Q. Do you acknowledge that - - that it would have been helpful to actually see the content of those notes, the actual memorialization of the conversation between Ms. West and Mr. Guizar?
> A. Yes.
> Q. Does Tyson deem it  - - deem those notes to likely have held more - - more and more accurate information than Guizar's recollections as he characterizes them?
> A. Yes.

Rackard depo., pp. 34-35 (cited pages are attached hereto as Exhibit E).

Rackard also declared that, ultimately, Tyson determined that West had been untruthful in her numerous reportings of sexual harassment during her employment, based upon an investigation performed months after West began her reporting of sexual harassment, and in reliance in part upon Guizar's own faulty "recollection" of events from the exit interview. Id. at 36, 75, 79; see also Guizar's own admittedly faulty memory of the exit interview with West, as memorialized during Tyson's too-late "investigation" in Guizar's emails attached hereto as Exhibit B.  It is undisputed that Tyson's "investigation" was conducted without the benefit of any statement directly by West other than a brief paragraph in her Charge of Discrimination filed with the EEOC, and that Tyson did not rely upon the notes taken by Guizar in the exit interview. Instead, Tyson relied upon the months-later fading (and admittedly incorrect) memories of Guizar and other remaining Tyson employees in electing to base its conclusion upon alleged statements distantly attributed to West, that she did not want to continue working at Tyson in order to spend more time with her kids, instead of the actual, timely reporting by West as memorialized by Guizar, but curiously "lost" by Tyson.  Tyson's conclusion, that West was untruthful in her reporting of sexual harassment, attempts to take advantage of Tyson's "loss" of Guizar's notes and the substantive content of West's reporting included therein.

Tyson acknowledges that, had it found that West's complaints were "substantiated", Tyson would have made efforts to reemploy West instead of West suffering a long period of unemployment.

> Q. . . . [H]ow does Tyson handle a victim of sexual harassment who's been apparently driven away from work because it's so severe?  Is there any interest in Tyson in that situation to try to bring the employee back?
> . . .
> A. Okay. In the event that you had a situation where a team member had filed a complaint under harassment and discrimination, and that information was substantiated - - well, let me back up - - and that person refused to come to work as a result of that and that investigation was conducted and it was found that there was some substantiation to that complaint, **that team member would be offered employment.**

4

> Q. Okay. And Tyson did not offer employment to Ms. West in this circumstance?
> A. That's correct.
> Q. Okay. And was that because Tyson determined that Ms. West had lied?
> A. Tyson had determined that the allegations were untrue.

Id. at 74-75 (emphasis added). The consequences of Tyson's loss of Guizar's notes are far-reaching and irreconcilable with the course of action taken by Tyson against West, failing to properly or promptly investigate West's concerns, permitting the harassment to continue unabated and forcing West to endure months of unemployment and financial hardship.

*Analysis*

*The Sanction for Spoliation*

Plaintiff Amanda West is entitled to an inference concerning the character and content of the missing evidence. The jury in this action should be instructed that it may infer that the missing evidence would support Plaintiffs' claims as to the content of her reporting to Guizar, and would be adverse to Defendant Tyson Foods, Inc. The resulting failure of Tyson to investigate promptly and the validity of Tyson's "too-late" investigation, which did not rely upon Guizar's notes, are likewise subject to the adverse inference against Tyson. Further, under any summary judgment motion by Tyson, the Court should likewise consider the inference to the extent Tyson's conduct is at issue in the summary judgment motion.

Under Federal Rule of Evidence 302, the effect of a presumption in a federal civil case is to be determined in accordance with state law. Kentucky law definitively indorses an adverse inference instruction as the proper remedy for spoliation of evidence. In Monsanto Co. v. Westinghouse Elec. Corp., 950 S.W.2d 811, 815 (Ky. 1997), the Court stated:

> Where the issue of destroyed or missing evidence has arisen, we have chosen to remedy the matter through evidentiary rules and "missing evidence" instructions.

The Monsanto Court positively cited both Kentucky and extra-jurisdictional cases outlining the instruction parameters and conceptual basis for the chosen rule. See id. citing Tinsley v. Jackson, 771 S.W.2d 331, 332 (Ky. 1989)(holding, where evidence was "lost," though not by

5

misconduct, that trial court should evaluate prejudice and consider "missing evidence instruction" or limitation on other evidence); Sanborn v. Commonwealth, 754 S.W.2d 534, 539-40 (Ky. 1988)(presuming prejudice from intentional erasure of tape by prosecutor and approving missing evidence instruction); Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434 (Minn. 1990)(endorsing "unfavorable inference to be drawn from a failure to produce evidence in the possession and under the control of a party to litigation.")(citation omitted). The Sixth Circuit has uniformly applied this standard to its Kentucky based cases. See One Beacon Insurance Co. v. Broadcast Development Group, Inc., 147 Fed. Appx. 535, 540 (6th Cir. 2005)("Under Kentucky law, a missing evidence instruction . . . is appropriate where there exists a genuine question of fact as to whether one party negligently destroyed or lost evidence relevant to an essential element of an opposing party's case."); See also, Rogers v. T.J. Samson Comm. Hosp., 276 F.3d 228, 232-34 (6th Cir. 2002).

     West thus seeks an instruction to the jury in this action. The instruction should inform the jury about the categories of evidence destroyed or missing, and should permit the jury to infer that the evidence would have contained information adverse to Tyson and helpful to Plaintiffs' case. Further, in any summary judgment motion filed by Tyson this Court should likewise apply an adverse inference against Tyson Foods, Inc. in its evaluation and disposition of such motion.

                                 Respectfully submitted,

                                 **RANSDELL & ROACH PLLC**

                                 s/W. Keith Ransdell
                                 Ransdell & Roach PLLC
                                 176 Pasadena Drive
                                 Building One
                                 Lexington, KY 40503
                                 Phone: 859-276-6262
                                 Fax: 859-276-4500

and

Brad Rhoads
Rhoads & Rhoads
P.O. Box 2023
Owensboro, Kentucky 42302-2023

*Certificate of Service*

I hereby certify that on August 13, 2007, I electronically filed the foregoing Motion with the clerk of the court using the CM/ECF system, which will send a notice of electronic filing to the following:

Demetrius O. Holloway, Esq.
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky
 40202-3400

 Brad Rhoads, Esq.
 Rhoads & Rhoads PLLC
 P.O. Box 2023
Owensboro, Kentucky, 42302-2023

y:\shared\keith\west, amanda\motion for interference & spoiliation of evidence.doc