UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

AMANDA WEST,

        PLAINTIFF

v.

        CIVIL ACTION NO. 4:05-CV-183M

TYSON FOODS, INC.,

        ELECTRONICALLY FILED

        DEFENDANT.

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT**

Defendant, Tyson Foods, Inc. ("Tyson"), by counsel, submits the following

memorandum in support of it motion for summary judgment.  Tyson hereby incorporates its

memorandum in support of summary judgment herein as if stated in full.

## ARGUMENT[1]

**I.**    **Ms. West  fails to raise a genuine issue of material fact to support that she was
subjected to supervisor harassment.**

The Sixth Circuit defines a supervisor for Tile VII purposes as "an individual who serves

in a supervisory position and exercises significant control over the plaintiff's hiring, firing or

conditions of employment." *Summerville v. Ross/Abbott Laboratories*, 1999 U.S. App. Lexis

21009, * 24 (6th Cir. 1999) (Attached as Exhibit A) (citing *Pierce v. Commonwealth Life Ins.

Co.*, 40 F.3d 796, 803 (6th Cir. 1994)).  Several other courts have similarly held that individuals

who lack the ability to hire, fire, or discipline are not supervisors under Title VII.  *See e.g. Velez

v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006); *Cheshewalla v. Rand & Son

Construction Co.*, 415 F.3d 847, 850-51 (8th Cir. 2005); *Noviello v. City of Boston*, 398 F.3d 76,

---

[1] Ms. West waived her retaliation claims, thus Tyson did not brief that issue.  *See* Plaintiff's Response, p. 36, fn. 2.

96 (1st Cir. 2005).

Ms. West admits that George and Samuel, who are line leads, did not have the authority to hire, fire, or discipline employees.  (West Depo., p. 58; Excerpts from Ms. West's Deposition are attached as Exhibit B.)  In fact, she testified that Mr. Parks, and Maria Robinson, the other supervisor on De-Bone 2nd shift, would be responsible for any disciplinary actions. ( *Id.*)  Thus, it is clear that neither George nor Samuel are supervisors for Title VII purposes.

Ms. West attempts rely upon the EEOC's Guidance and the decisions of *Mack v. Otis Elevator Co.*, 326 F.3d 116 (2nd Cir. 2003) and *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006) to support her claim that the authority to hire, fire or discharge is not necessary for an individual to be a supervisor under Title VII.  Plaintiffs' Response, pp. 27-29.  This argument fails.  First, the EEOC Guidance is not the law.  *See EEOC v. Sundance Rehab. Corp.,* 466 F.3d 490, 500 (6th Cir. 2006).  Second, Ms. West has failed to produce any evidence to support that George or Samuel's position as line leads "enabled or augmented" their ability to create a hostile work environment as described in the *Mack* decision.  Third, the *Doe* decision is distinguishable. There, the court dealt with a shift supervisor who was often the sole supervisor in an ice cream parlor, that statutorily raped of an under-age employee.  *Doe,* 457 F.3d at 707, 717.  The Court held that where an employer grants an employee authority over other employees, it must exercise greater care than in a case of routine coworker harassment.  However, the Court admits that it is different from the strict liability standard applied to supervisors with ultimate authority.  *Id.* at p. 716-717.  Accordingly, Ms. West's claim for alleged supervisor harassment fails as a matter of law.

II.     **Even if the Court were to hold that Ms. West's alleged harassers were supervisors, Tyson is entitled to assert the Ellerth/Faragher affirmative defense.**

The Supreme Court has held that when the alleged harassment is committed by a

supervisor, and results in a "tangible employment action" such as discharge, demotion, or undesirable reassignment, the affirmative defense is not available. *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998). The only alleged tangible employment action in this case is constructive discharge.

In *Pennsylvania State Police v. Suders*, 542 U.S.129, 148-49 (2004), the Supreme Court held that unless the supervisor's "official act," such as demotion or a reduction in compensation that leaves the employee no alternative other than to resign precipitates the constructive discharge, the employer is entitled to assert the affirmative defense. Ms. West's admission that Tyson never changed her pay, working hours, or job duties proves that she did not suffer an "official act," and thus, Tyson is entitled to assert the affirmative defense.

Ms. West attempts to create an "official" act by arguing that Mr. Parks instructed Ms. West not to go to Human Resources, which is an official act. Plaintiff's Response, pp. 30-31. This attempt fails. Throughout her response, Ms. West argues that during this alleged conversation with Mr. Parks she was "instructed" not to go to Human Resources, however, Ms. West testified:

> Q. Okay. And did Mr. Stokes ever say go to HR?
>
> A. He was the one that said do you want to go to HR in front of Corey and that's when Corey said, "Well, let me fix this first." **And that was his exact words.** Implying that he didn't want me to go.

(West Depo., pp. 72-73, emphasis added.) Ms. West has now turned Mr. Parks' alleged "let me fix this first" into Mr. Parks **instructed** her not to go to Human Resources. Ms. West's argument is further refuted by her admission that she would have **never** gone to Human Resources because she did not know them, and her admission that the day before she left Tyson she was told in sexual harassment training that an employee could report to Human Resources if they did not

feel they were getting the desired results from their supervisor.  (*Id.* at pp. 89, 101.)

Ms. West attempts to argue that Mr. Park's failure to report her alleged complaints to Human Resources constitutes an official act in that it is similar to the supervisors failure to forward the plaintiff's exam in *Suders*.  *See* Plaintiff's Response, p. 31.  Ms. West mischaracterizes the Court.  In *Suders*, the Court held that "facts surrounding" the exam were "less unofficial," which included the supervisors setting up the plaintiff to be arrested when she tried to put the exams back in the drawer where she discovered them.  542 U.S. at 135-136.

**A.**     **Ms. West fails to raise a genuine issue of material fact to support that the alleged conduct that occurred during her first three weeks on the floor constitutes actionable harassment.**

Ms. West admits that with the exception of the events involving George, none of the alleged conduct consisted of physical touching or requests for sex or sexual favors.  (West Depo., p. 51.)  In fact, Ms. West admitted that she "didn't take it that seriously the first week," and did not report the alleged sexual comments to her supervisor or Human Resources.  (*Id.* at pp. 48-49.)  In describing the conduct that occurred during the second week, as well as the third week leading up to the alleged incident with George, Ms. West describes it as "the same as the first week."  (*Id.* at pp. 50, 64.)  Thus, presumably, Ms. West did not "take it that seriously" during the second and third weeks either, as she failed to make any complaints until the alleged incident with George.  The law is clear that where the alleged victim does not consider the conduct to be serious, there is no sexual harassment.  *See Highlander v. K.F.C. Nat'l Management*, 805 F.2d 644, 650 (6th Cir. 1986) (no hostile work environment where employee "didn't think it was that big of a deal").

As for the alleged incident with George, assuming for purposes of this motion that the allegations regarding the incident and Ms. West's subsequent report to Mr. Parks are true, the evidence is undisputed that Mr. Parks moved Ms. West to an outside line so that he could

periodically observe Ms. West.  (Parks Depo., p. 23; Excerpts from Mr. Parks' Deposition are attached as Exhibit C.*)*  Ms. West admits that she believed that Mr. Parks moved her so that she would not have to work around George, and **admits that George never bothered her again.** (West Depo., pp. 68-69.)  *See Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 51 (6th Cir. 1996) (where corrective action ends the harassment, employer is not liable).  Further, Ms. West admits that she never reported any other alleged sexual harassment to Mr. Parks.  (West Depo., p. 90.)  Clearly the alleged conduct does not constitute severe and pervasive conduct and, therefore is not actionable.

Ms. West argues that the "totality of the circumstances" standard precludes the Court from accepting Tyson's "compartmentalized" analysis of Ms. West's allegations.  *See* Plaintiff's Response, pp. 17-18.  However, this case is unique in that there is no question that subsequent to Ms. West's alleged complaints during her third week on processing floor, she allegedly suffered much graver and more serious incidents of sexual harassment which she failed to report pursuant to Tyson's harassment policy during her employment.  Thus, the Court should adopt Tyson's approach of analyzing the harassment as the alleged conduct which occurred prior to her alleged report, and the alleged conduct that occurred afterwards, which she failed to properly report during her employment.

> **B.     Ms. West fails to raise a genuine issue of material fact to refute that Tyson has a suitable anti-harassment policy and complaint procedure.**

Tyson's has a harassment policy that details both the conduct which is prohibited, and specifies the procedure for lodging complaints for alleged violations of the policy.  *See* Exhibit D.  This policy is provided to all employees.  Tyson's policy provides that the employee "at any point can contact Tell Tyson First Line at (800) 643-3410 x-7313 and/or report to any of the following individuals if the Team Member feels more comfortable skipping one or more of the

steps." *Id.* (emphasis in original).   The policy lists nine different company officials who may be contacted, and provides the employee with the telephone numbers for the Employment Compliance Department and the Tell Tyson First Line for reporting harassment and/or discrimination. *Id.* Finally, the policy identifies the name and telephone numbers for six individuals who are identified as harassment investigators who may also be contacted to report harassment and/or discrimination. *Id.* Ms. West was trained on this policy twice, approximately four hours of training on sexual harassment during her orientation at Tyson, and again on February 9, 2005, the day before she abandoned her employment. (West Depo., pp. 32, 99-100; *see* Exhibits D and E.)

Ms. West, citing *Clark v. UPS*, argues that Tyson's fails to establish this prong of the defense because Tyson failed to prevent and correct the alleged harassment. *See* Plaintiff's Response, pp. 29-30. However, *Clark* is distinguishable. In *Clark,* the plaintiff was able to cite to several instances where her supervisors actually witnessed the alleged harassment and did nothing despite her complaints. *Clark*, 400 F.3d at 344-47. Here, the evidence is undisputed that Ms. West has not been unable to identify a single witness to any of the alleged acts of sexual harassment. Further, the only alleged report pursuant to Tyson's policy made by Ms. West was her alleged report to Mr. Parks during her third week working on the processing floor. As a result, Mr. Parks moved her to a different position where he could keep an eye on her, and after he did so, George never bothered her again, and she never complained to Mr. Parks again.

Ms. West tries to assert that her complaints to Mr. Stokes constitute a report under Tyson's policy because he was a "supervisor." This claim is without merit. Ms. West attempts to argue that trainers are supervisors based on Ms. Rackard's testimony that they were someone who Ms. West could look to in supervisory capacity. *See*  Plaintiff's Response, pp.26-27.

However, Ms. Rackard further testified that trainers do not have the ability to hire or fire employees.  (*See* Rackard Depo., pp. 88-89; Excerpts from Ms. Rackard's Deposition are attached as Exhibit F.)  In fact, any discipline or performance problems would be handled by the supervisors.  (*Id.* at p. 94.)  Ms. Rackard further testified that trainers were responsible for showing newly hired employees how to cut and de-bone the chickens.  (*Id.* at pp. 97-98.)  This testimony is consistent with Mr. Stokes's deposition testimony that occurred months before.  Mr. Stokes testified that as a trainer, he did not have any type of supervisory authority.  (Stokes Depo., pp. 3-4; Excerpts from Mr. Stokes' Deposition are attached as Exhibit G.)[2]  Thus, Mr. Stokes clearly was not Ms. West's supervisor.

Further, Ms. West makes the leap from asking Ms. Rackard whether trainers were someone who could be looked to in a supervisory capacity, to arguing here that trainers are someone that Ms. West could report sexual harassment to under Tyson's policy.  *See* Plaintiff's Response, p. 26.  Ms. West fails to cite to Ms. Rackard's deposition for this proposition because **she was never asked that question.**

Furthermore, to determine who Ms. West considered to be her supervisor for purposes of reporting alleged sexual harassment, the Court need only look at Ms. West's own testimony.  When asked who her supervisors were, Ms. West testified, "Corey Parks and Maria Robinson." (West Depo., p. 18.)  When questioned about why she did not report the alleged harassment to the Human Resources Manager, Ms. West testified, "Because it said and/or which means you could speak to either one and I chose Corey."  (*Id.* at p. 76.)

Additionally, Ms. West argues that her alleged reference to Samuel being very persistent was because Samuel allegedly sexually assaulted her the following week.  Ms. West's unspecific

---

[2] Mr. Stokes also testified that trainers did not even have the authority to move employees from one position to another in the De-Bone Department.  (*Id.* at pp. 5-6.)

complaint regarding Samuel the week before, however, did not relieve Ms. West of her duty to report Samuel's alleged assault.

Finally, Ms. West argues that Mr. Guizar failed to take any action regarding her alleged complaints on February 18, 2005.[3] *See* Plaintiff's Response, pp. 26-27. However, it is undisputed that Ms. West's alleged complaints to Mr. Guizar came more than a week after Ms. West abandoned her job. Ms. West has failed to cite any authority to support that Tyson has a duty to correct alleged sexual harassment that she failed to report until after her employment with Tyson ended.

Tyson has established that it has a sufficient policy in place to prevent and correct sexual harassment. Thus, Tyson has satisfied the first prong of the *Ellerth/Faragher* affirmative defense.

### C. Ms. West cannot raise a genuine issue of material fact to refute that she unreasonably failed to take advantage of Tyson's preventative and corrective opportunities.

The evidence shows that Ms. West unreasonably failed to take advantage of the preventative and corrective procedures provide by Tyson in its harassment policy. Ms. West admittedly never complained to Mr. Parks, Human Resources, or anyone identified in Tyson's harassment policy. (West Depo., pp. 86-87, 99.) Ms. West admits that during the sexual harassment training she received during orientation, and the additional training she received on February 9, 2005, she was informed that she should report any sexual harassment to Human Resources, and that she could report to Human Resources if she did not feel that she was getting the desired results form her complaint to her supervisor. (*Id.* at pp. 30, 101.) It is undisputed that

---

[3] Ms. West has filed a motion for an adverse inference regarding the details of her alleged complaints during the exit interview with Mr. Guizar based on the fact that Tyson cannot find the exit interview form. While Tyson vehemently denies that Ms. West is entitled to an adverse inference, the issue is irrelevant here as all allegations by Ms. West must be taken as true for purposes of this motion.

Ms. West never went to Human Resources regarding any alleged sexual harassment during her employment. Further, even upon being informed by her coworker, Andrea Boykin, that she should speak with Ms. Boykin's husband in Human Resources about the alleged harassment, Ms. West declined to do so. (*Id.* at p. 88.) In fact, Ms. West admits that she would have never gone to Human Resources to report the alleged sexual harassment under any circumstance because she did not know any of the people in Human Resources. (*Id.* at p. 89.) Clearly, Ms. West unreasonably failed to take advantage of the preventative and corrective opportunities provided by Tyson, and thus, her claim fails as a matter of law.

III.    **Ms. West fails to raise a genuine issue of material fact regarding alleged harassment, whether supervisor or coworker, because she unreasonably failed o take advantage of Tyson's preventative and corrective procedures.**

The plaintiff argues that Tyson failed to address the coworker standard for sexual harassment in its motion for summary judgment. *See* Plaintiff's Response, p. 25. However, the same affirmative defense that applies in cases of alleged supervisor sexual harassment also applies in coworker sexual harassment cases. *See Good v. MMR Group, Inc.*, 2001 U.S. Dist. Lexis 20036, *13 (W.D. Ky. 2001) ("The policy goals of Title VII which undergird the *Burlington Industries'* affirmative defense apply equally to both types of claims, and this Court holds the defense is available to employers in both contexts.") (Attached as Exhibit H). Thus, the same arguments Tyson makes regarding Ms. West's unreasonable failure to take advantage of Tyson's corrective policies and procedures for alleged supervisor harassment apply equally to claims related to alleged coworker harassment.

Further, even under the "knew or should have known" standard, Ms. West's claim for coworker harassment fails as a matter of law. The undisputed evidence shows that subsequent to Ms. West's alleged complaint to Mr. Parks, she never complained to Mr. Parks or anyone else in management regarding alleged sexual harassment during her employment. Accordingly, Ms.

West fails to raise a genuine issue of material fact to support a claim for coworker sexual harassment.

**IV.    Ms. West fails to raise a genuine issue of fact regarding constructive discharge.**

The Sixth Circuit has made it clear that the standard for constructive discharge requires a showing that: (1) Tyson deliberately created intolerable working conditions as perceived by a reasonable person, and (2) Tyson did so with the intention of forcing the employee to quit. *See Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005); *Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001); *Jones v. Miller Pipeline Corp.*, 2005 U.S. Dist Lexis 21216, *9-*12 (W.D. Ky. 2005) (Attached as Exhibit I.).  Ms. West admitted that she did not feel that Tyson was intentionally trying to get her to quit her job.  (West Depo., p. 118.)

Ms. West alleges that her answer was taken out of context.  *See* Plaintiff's Response, pp. 31-36.  This argument lacks merit.  A review of the record shows that the question was clear and unequivocal, and Ms . West's answer was clear and unequivocal.  This is evidenced by the fact that Ms. West's counsel never objected.  (West Depo., p. 118.)  Thus, Ms. West's "context" argument fails.

Further, Ms. West fails to produce any evidence that Tyson was intentionally trying to get her to quit her job.  Ms. West argues that Mr. Guizar's failure to tell her she did not have to quit her job during the exit interview is evidence of Tyson's intent that she quit her job.  *See* Plaintiff's Response, pp. 35-36.   This argument also fails.  It is important to note that when the exit interview was conducted, Ms. West had already been terminated for job abandonment!  How could Tyson intend to force her to quit when she had already been terminated?

**CONCLUSION**

Based on the foregoing, Tyson is entitled to summary judgment as a matter law on all claims asserted by Ms. West and, therefore, her claims should be dismissed with prejudice.

s/ Demetrius O. Holloway
Shannon Antle Hamilton
Demetrius O. Holloway
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
shamilton@stites.com
dholloway@stites.com
Telephone:     (502) 587-3400
Counsel for Defendant, TYSON FOODS, INC.

## CERTIFICATE OF SERVICE

On September 26, 2007, I electronically filed the above pleading through the ECF system, which will send a notice of electronic filing to the following:

W. Keith Ransdell, Esq.
176 Pasadena Drive
Building 1
Lexington, KY 40503
Telephone: (859) 276-6262
E-mail:  keith@rwlaw.org
Counsel For Plaintiff, Amanda West

Bradley P. Rhoads
Rhoads & Rhoads, P.S.C.
115 E. Second Street, Suite 100,
Owensboro, Kentucky 42303
brad@rhoadsandrhoads.com
Co-Counsel for Plaintiff, Amanda West

s/ Demetrius O. Holloway
Demetrius O. Holloway